**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **DARREIL M. PERSLEY,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:10-CV-1761-N (BF)** |
| | § | |
| **COMMISSIONER OF SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Darreil Persley ("Plaintiff") brought this action pursuant to section 405(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g). He seeks review of a final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying his application for Title XVI benefits under 42 U.S.C. § 1382c(a)(3)(A).

## I. BACKGROUND

### A. Procedural History

On July 31, 2008, Plaintiff filed an application for Title XVI supplemental security income ("SSI") payments, alleging a disability onset date of July 31, 2008. (Tr. 11; 96-99.) Plaintiff alleged disability due to Attention Deficit Disorder ("ADD") and sickle cell anemia. (Tr. 112.) His application was denied initially and upon reconsideration. (Tr. 44; 52.) Plaintiff timely requested a hearing before an administrative law judge ("ALJ"), and a hearing was held on July 23, 2009. (Tr. 20; On October 26, 2009, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 11-19.) Plaintiff requested and was denied review of the ALJ's decision by the Appeals Council. (Tr. 3-5.) Plaintiff filed this case on September 8, 2010, seeking judicial review of the administrative proceedings. (Doc. 1.) This matter is ripe for consideration on the merits.

### *B. Factual History*

#### 1. Plaintiff's Age, Education, and Work Experience

Plaintiff was 19 years old on the date his application was filed. (Tr. 96.) He was 21 years old when the ALJ rendered his decision. (Tr. 19.) Plaintiff completed eleventh grade but did not graduate from high school and has not obtained a general equivalency diploma ("GED"). (Tr. 116.) (Tr. 33.) He has no past relevant work. (Tr. 17.)

#### 2. Relevant Medical Evidence

Medical records show that Plaintiff has been diagnosed with sickle cell anemia. (Tr. 112.) His condition required hospitalizations on May 19, 2008, January 8, 2009, January 12, 2009, and March 2, 2009. (Tr. 259; 281; 295; 309.) The records from each hospitalization show that Plaintiff was admitted for acute sickle cell crisis and treated for severe pain. (Tr. 259; 281; 295; 309.)

Plaintiff was diagnosed with ADD at age twelve. (Tr. 127.) Plaintiff's school records, which show that Plaintiff needed curriculum modifications in reading, math, language, science, and social studies, support this diagnosis. (Tr. 153.) Behavioral problems were cited as a barrier to his success in the classroom, and Plaintiff was limited to short instructions of one to two steps. (Tr. 178; 198; 203; 232.) The records also note that Plaintiff could express his needs without assistance, take care of his personal hygiene, and write adequately for schoolwork without accommodation and that his adaptive behavior appeared to be appropriate for his age and culture group. (Tr. 192; 220; 226; 257.) Testing showed that Plaintiff scored two standard deviations below the norm in his reading abilities. (Tr. 211.)  At age seventeen a Wechsler Individual Achievement Test-Second Edition showed that Plaintiff had reading skills at just under a second grade level, math skills at about a third grade level, and written language skills at just over a first grade level. (Tr. 214.)  Plaintiff's full scale IQ, as

tested on November 8, 2005, was 70. (Tr. 215; 220.) A psychological assessment found that Plaintiff also struggles with depression. (Tr. 206; 242.)

### 3. Plaintiff's Hearing

Plaintiff, represented by counsel, testified at the July 23, 2009 hearing. (Tr. 20.) Plaintiff confirmed he stopped attending school after the eleventh grade. (Tr. 25.) He stated that he did not start his senior year of high school because he was incarcerated for a terroristic threat conviction and that he refused to attend an alternative school. (Tr. 25-26.) He attempted to get a high school equivalency degree, but "he got mixed up with the transportation type" and did not manage to attend the class. (Tr. 26-27.) He testified that he last worked as a busboy at Denny's and was let go after two months for failing to wear the proper gloves. (Tr. 27.) He previously worked part-time at a car wash for eight months, but he quit due to pain caused by the sickle cell anemia. (Tr. 28; 32.)

Plaintiff testified that his sickle cell anemia causes pain in the joints of his legs and back. (Tr. 29.) Sometimes it makes him feel weak and nauseated. (Tr. 29.) He feels this pain at least two or three times each week. (Tr. 29.) He testified that he feels the pain mostly in his middle and upper back and that it lasts for two to four days at a time. (Tr. 30.) When he experiences pain, he takes pain medication and lies down. (Tr. 31.) Plaintiff rated the pain at an eight or nine and stated that when the pain reaches a ten, he goes to the emergency room. (Tr. 30.)

Plaintiff also testified that he is not a strong reader but can "maybe" read and understand the headline of a newspaper. (Tr. 33.) He stated he could not write a letter telling someone about the hearing and estimated his reading to be at an eighth grade level, his writing to be at a fifth grade level, and his math to be at a tenth grade level. (Tr. 33-35.)

A vocational expert ("VE") testified that an individual with the residual functional capacity

("RFC") to (1) lift and carry fifty pounds occasionally and twenty-five pounds frequently, (2) sit, stand and walk throughout an eight-hour workday, and (3) otherwise perform the full range of medium work, except the individual is limited to jobs with a reasoning development level of one or two, could perform the jobs of hand packager (medium, SVP 2), dining room attendant (medium, SVP 2), and vehicle cleaner or carwash attendant (medium, SVP 2). (Tr. 36-37.) The VE stated that there is no conflict between this testimony and the Dictionary of Occupational Titles. (Tr. 37.) The VE further testified that an individual that must miss two days each week would not be able to maintain the previously named jobs at a competitive level. (Tr. 38.)

### C. The ALJ's Findings

First, the ALJ found that Plaintiff did not engage in substantial gainful activity after July 31, 2008, his application date. (Tr. 13.) Second, the ALJ found that Plaintiff has the following severe impairments: sickle cell anemia and apparent borderline intellectual functioning. (Tr. 31.) Third, after assigning "significant weight" to the opinions of the state agency medical consultants ("SAMCs"), the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or equals one of the listed impairments in Appendix I of the Regulations. (Tr. 14.) Fourth, he found that Plaintiff has the residual functional capacity ("RFC") to: lift and carry fifty pounds occasionally and twenty pounds frequently; sit, stand, and walk (individually or in combination) throughout an eight-hour workday; and otherwise perform a full range of medium level work, except he is further limited to jobs with a reasoning level of 1 or 2. (Tr. 14.) In making this determination, the ALJ gave "great weight" to the opinions of the SAMCs. (Tr. 17.) Fifth, the ALJ found that Plaintiff has no past relevant work, is a younger individual, has a limited education, and can communicate in English. (Tr. 17.) Sixth, he determined that transferability of job skills is

not an issue. (Tr. 17.) Seventh, the ALJ found that given Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 18.) Finally, the ALJ concluded that Plaintiff was not under a disability as defined by the Act after July 31, 2008. (Tr. 18.)

## II. ANALYSIS

### A. Standard of Review

To be entitled to social security benefits, a plaintiff must prove that he is disabled for purposes of the Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1.  An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.  An individual who does not have a "severe impairment" will not be found to be disabled.

3.  An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4.  If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

5.  If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional

capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the inquiry, the burden lies with the claimant to prove his disability.

*Leggett*, 67 F.3d at 564.  The inquiry terminates if the Commissioner determines at any point during

the first four steps that the claimant is disabled or is not disabled.  *Id.*

The Commissioner's determination is afforded great deference.  *Leggett*, 67 F.3d at 564.

Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits

is supported by substantial evidence and to whether the proper legal standard was utilized.

*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C.A. § 405(g).  Substantial evidence

is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to

support a conclusion; it must be more than a scintilla, but it need not be a preponderance."  *Leggett*,

67 F.3d at 564.  The reviewing court does not reweigh the evidence, retry the issues, or substitute

its own judgment, but rather scrutinizes the record to determine whether substantial evidence is

present.  *Greenspan*, 38 F.3d at 236.

### B. Issues for Review

Plaintiff contends that: (1) the ALJ erred in his determination that Plaintiff does not meet or

equal medical listings 7.05 and 12.05C or, in the alternative, the ALJ's step three decision is not

supported by substantial evidence; and (2) substantial evidence does not support the RFC

determination at step 4.

### C. Medical Listing 7.05

At the hearing, Plaintiff's counsel argued that Plaintiff's sickle cell anemia equals medical

listing 7.05. (Tr. 24.)  A claimant meets Listing 7.05 when he has a diagnosis of sickle cell disease

or one of its variants with:

(a) documented painful (thrombotic) crises occurring at least three times during the five months prior to adjudication; or

(b) required extended hospitalization (beyond emergency care) at least three times during the twelve months prior to adjudication; or

(c) chronic, severe anemia with persistence of hematocrit of 26% or less; or

(d) evaluation of the resulting impairment under the criteria for the affected body system.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 7.05. In his decision, the ALJ explains why Plaintiff does not *meet* medical listing 7.05 but does not discuss why Plaintiff's condition does not *equal* that medical listing. Plaintiff contends that the ALJ erred by failing to specifically address this issue. Plaintiff also argues, in the alternative, the ALJ's step 3 decision is not supported by substantial evidence.

The ALJ must specifically address whether a medical condition meets or equals a listing when a claimant raises the issue. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) ("in determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments") (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir.1989); *Jamison v. Bowen*, 814 F.2d 585, 589 (11th Cir.1987)). The explicit terms of 42 U.S.C. § 405(b)(1)[1] require the ALJ to not only discuss the evidence offered in support of a claim for disability but also explain an unfavorable decision at *each* step. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)

---

[1] 42 U.S.C. § 405(b)(1) provides:

"[t]he Commissioner of Social Security is directed to make any findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Any such decision by the Commissioner of Social Security, which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based."

(emphasis added).  Although an exhaustive discussion may not be required in each case, the decision must enable the Court to perform a meaningful review.

In his step 3 analysis, the ALJ stated that he gave "significant weight" to the opinions of the SAMCs because "those opinions were well supported by, and consistent with, the remaining credible medical evidence, particularly the objective medical evidence." (Tr. 14.) The Court finds that this explanation is sufficient and that the ALJ committed no error.

However, the Court must still determine whether such explanation is sufficient evidence capable of supporting the ALJ's decision. The Court finds that it is not. The SAMCs' opinions, on which the ALJ relied  heavily, were performed prior to the three sickle cell crises Plaintiff experienced within a three month time period. Although these crises were not within five months of adjudication, as is required to meet the listing, they constitute additional medical evidence that may have had a significant impact on the SAMC opinions as to whether Plaintiff equals the listing. *See Brister v. Apfel*, 993 F. Supp. 574, 578 (S.D. Tex. 1998) (finding that when additional medical evidence is received that might change the SAMC's findings, "an updated medical opinion regarding disability is required"). Because the three crises make it at least reasonable to find that Plaintiff equals Listing 7.05, the ALJ should have received an updated medical opinion. *See Maniaci v. Apfel*, 27 F. Supp. 2d 554, 554 (E.D. Pa. 1998) (quoting *Todd v. Apfel*, 8 F. Supp. 2d 747, 755 (6th Cir. 1998)).  Other than his reliance on the inadequate SAMC opinions, the ALJ provided no other explanation for his step three determination. The Commissioner's post-hoc arguments cannot remedy the ALJ's failure to support his decision with substantial evidence. *See Newton v. Apfel*, 209 F.3d 448, 454 (5th Cir. 2000) (holding that the decision "must stand or fall within the reasons set forth in the ALJ's decision"). The Court finds that the Commissioner's step 3 determination is not

8

supported by substantial evidence; therefore, the case should be remanded for reconsideration in line with this opinion.

### D. Medical Listing 12.05C

Plaintiff also argues that the ALJ erred because even though he states he considered Listing 12.05, Mental Retardation, he failed to engage in an evaluation of 12.05C, the section actually applicable to Plaintiff's impairment. The Commissioner concedes the ALJ did not provide a specific 12.05C analysis but argues this failure was harmless error.

In order to meet Listing 12.05C, a claimant must establish three criteria:

(1) significant subaverage intellectual functioning with deficits in adaptive functioning which initially manifested before age 22; and

(2) a valid I.Q. score of 60 to 70; and

(3) a physical or other mental impairment posing additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. The Commissioner argues that although Plaintiff meets the second and third requirements, there is no evidence in the record demonstrating Plaintiff has significant subaverage intellectual functioning with deficits in adaptive functioning. The Commissioner's argument is without merit.

The record clearly shows Plaintiff's academic deficits, including his need for special education classes and substantial curriculum modifications. Furthermore, evidence throughout the record could support a finding of deficits in adaptive functioning.[2] At the hearing, Plaintiff indicated

---

[2] "Adaptive activities" include: cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for grooming and hygiene, using telephones and directories, and using a post office. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C(1). The regulations state: "[i]n the context of your overall situation, we assess the quality of these activities by their independence, appropriateness, effectiveness, and sustainability. We will determine the extent to which you are capable of initiating and participating in activities independent of supervision or direction. *Id.*

he has difficulty with public transportation. (Tr. 26-27.) He also testified he could not write a letter

and that is was only "possible" that he could write and follow a grocery list. (Tr. 33; 35.) He stated

he would have difficulties with these activities due to reading and writing limitations. (Tr. 33; 35.)

Other records show he lives with his parents, he does not cook, clean or shop, his parents handle all

finances for him, and his mother reminds him to take his medication and helped him fill out the

Social Security forms. (Tr. 119-23.) Defendant raises several arguments for why this evidence

should be discounted, but the Court cannot accept these post-hoc arguments. *See Newton*, 209 F.3d

at 454. It is not for this Court to speculate as to how the ALJ would find on this matter. *See Boyd*

*v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001). The Court finds the ALJ committed prejudicial error

when he failed to address Listing 12.05C specifically.

### E. Residual Functional Capacity

Because the Court has determined the case should be remanded at step 3, it is not necessary

to address step 4 RFC determination.

### IV. RECOMMENDATION

For the foregoing reason, the Court recommends that the decision of the Commissioner be

REMANDED for reconsideration.

SO RECOMMENDED, August 22, 2011.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).